Aguilar Law Office, PLLC
Denise K. Aguilar
Arizona Bar No. 023063
5505 W. Chandler Blvd., Ste. 5
Chandler, Arizona 85226
(480) 759-1100 phone
deniseaguilar@me.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | |
|---|---|
| Plaintiff, | Case No. 3:18-cr-08374 DWL-3 |
| vs. | **SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE** |
| Gabriel Lopez, | |
| Defendant. | |

Defendant Gabriel Lopez, through counsel, submits the following as his Sentencing Memorandum pursuant to 18 U.S.C. §3553 and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005). Mr. Lopez asks that this Court find that a downward variance is appropriate, and sentence Defendant to twenty-four (24) months of incarceration with credit for time served. This Motion is supported by the following Memorandum of Points and Authorities, attached hereto.

Respectfully submitted: June 2, 2020.

Aguilar Law Office, PLLC

*s/Denise K. Aguilar*
Denise K. Aguilar
Attorney for Defendant

-1-

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. Introduction**

Mr. Lopez was arrested January 30, 2019 after an indictment was filed on November 14, 2018, charging Mr. Lopez with Possession of an Unregistered Firearm and Illegal Possession of a Machinegun between July 10, 2017 and September 19, 2017. Mr. Lopez was released to Pretrial Services on February 27, 2019.  Mr. Lopez was initially doing well on pretrial release, and tested negative for illegal drugs and alcohol. However, Mr. Lopez has a history of abusing cocaine and alcohol, and after about six months on pretrial release, and finding that he would be facing a significant period of incarceration in this case, he fell back to using those substances. He used them as a way to attempt to try to put his impending incarceration out of his mind, obviously not the ideal manner in which to deal with this situation. Mr. Lopez was arrested in California on October 15, 2019 and transported to Arizona to face this court. He entered his plea of guilty pursuant to a plea agreement on March 25, 2020. The plea agreement stipulates that Mr. Lopez will plead guilty to Count 11, Illegal Possession of a Machinegun, his sentence will not exceed the high end of the Guidelines range, and the government will recommend a two-level reduction of offense level for acceptance of responsibility.

Mr. Lopez is 29 years old. He was born in Long Beach, California and was raised by both parents in La Puente, California. Mr. Lopez has three siblings and has a close relationship with all of his family members. He has a young daughter for whom he is very concerned. He believes that his two-year-old daughter is in the custody of DCFS in California and that her mother has allowed her own substance abuse to get in the way of being reunited with their daughter. Mr. Lopez is extremely anxious to get back to California, so that he may begin the

process of reunification and so that he can raise her, rather than her being in foster care.

As is very carefully described in the Presentence Report (PSR), Mr. Lopez had an interest in firearms and considered himself a collector. He enjoyed target shooting and learning about how firearms work, as well as how to build guns. As his interest developed into a hobby, he was introduced to his co-defendants *via* social media. As Mr. Lopez voluntarily disclosed to ATF agents in October 2018, he had purchased several guns from Jose Barocio, Jr. and Kyron Tomlinson in mid-2017. Mr. Lopez was forthright with his involvement, despite having concerns about being charged, and indeed he confirmed much of the incriminating information agents had about him from his co-defendants.

**II. Applicable Law**

Pursuant to 18 U.S.C. §3553(a)(2), the Court shall impose a sentence sufficient, but not greater than necessary to comply with the following purposes:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In *United States v. Booker*, the United States Supreme Court decided that the Constitution mandated that the Sentencing Guidelines be advisory and subsequent decisions by the Supreme Court have made it clear that after calculating and considering the appropriate range under the Sentencing Guidelines, the Court is free to impose a sentence consistent with the factors set forth in §3553 but outside the structures of the Guidelines. 543 U.S. 220, 125 S.Ct. 738 (2005). *United States v. Kimbrough,* 552 U.S. 85 (2007), provides that a sentence

below the Guideline range where the court concludes that the Guideline range is simply too high will be upheld where the particular circumstances of the defendant's case are weighed, and though not rising to the level of deserving a variance, are also considered in determining the sentence.

Under §3553(a), a court must consider a defendant's individual characteristics along with the enumerated reasons for imposing a particular sentence. Where the Guidelines fail to properly reflect these considerations, a departure or variance may be warranted. *Spears v. United States*, 555 U.S. 261 (2009); *Rita v. United States*, 551 U.S. 338 (2007). A longer sentence that would impair a defendant's rehabilitation is cause to consider a downward variance. *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006), *Gall v. United States*, 552 U.S. 38 (2007). Additionally, the court may find that a downward departure or variance is appropriate based upon disparity between defendants that are similarly situated. *United States v. Chavez-Diaz,* 444 F.3d 1223 (10th Cir. 2006).

A defendant's personal history may likewise be taken into consideration in determining whether a downward departure or variance is warranted. The court may also consider the harsh impact of the incarceration on the family members of the defendant. *United States v. Antonakopoulos*, 399 F.3d 68 (1st Cir. 2005). Likewise, the collateral consequences to the defendant that would result in separation from family, may be support for below-Guidelines sentences. *United States v. Villanueva,* 2007 WL 4410378 (E.D. Wisc. Dec. 14, 2007). Finally, in the case where there are many mitigating factors, the court may depart based on the totality of the circumstances. *United States v. Martin,* 520 F.3d 87 (1st Cir. 2008), *United States v. Rioux,* 97 F.3d 648 (2d Cir. 1996), *United Stats v. Huckins,* 529 F.3d 1312 (10th Cir. 2008).

**III. Factors Under 18 U.S.C. §3553**

Defendant argues that a sentence below the Sentencing Guideline Range satisfies the goals of Sentencing under 18 U.S.C. §3553. The offense of which he is not, in and of itself, a serious offense, however it carries a significant punishment. However, punishment over and above twenty-four months would be contradictory to the purposes set forth by statute and would, in fact, be unjust and unnecessary punishment.

The prospect of a sentence anywhere close to the Guideline range of 41-51 months in prison is more than sufficient deterrence to prevent Mr. Lopez from returning to similar behavior upon his release. When he committed the crime discussed herein, he was using substances regularly that impaired his judgment. Additionally, his impairment allowed for his willful ignorance as to the laws regarding firearms and their conversion to machineguns. After being in custody in this case for approximately nine months, in addition to the time he spent in jail in California for his State conviction, Mr. Lopez experiences the deterrent effect of his potential sentence on a daily basis. Mr. Lopez is not at all interested in having any part of that lifestyle in the future. His focus at this point is getting out, getting back to work, getting his daughter back, and getting certified as a welder.

The public is not in need of protection from Mr. Lopez. He is not a violent person, and his record demonstrates no history that would indicate a need to protect the community from Mr. Lopez. Mr. Lopez is a very caring individual and is known to be a good friend and reliable man to those to whom he is close. While Mr. Lopez had an interest in guns and has weapons-related convictions, he only used guns for recreational shooting and personal protection. Mr. Lopez denies the description set forth in Paragraph 46 of the PSR regarding a domestic violence arrest in 2019. The other party involved in that incident was the mother of his child,

who has a significant history of substance abuse, which has led to their daughter being taken by DCFS. Mr. Lopez was not charged in that incident.

Mr. Lopez is an intelligent young man. He has a good work ethic and experience in construction, as a carpenter, and as a barber. While there are training and educational programs that may be beneficial to Mr. Lopez in the Bureau of Prisons, it is unlikely that Bureau of Prisons can offer him any better job skills or educational training than Mr. Lopez may be able to obtain outside of prison, while simultaneously being able to support his young daughter.

**IV. Support for Downward Departure/Variance**

As the Guidelines are to be a starting point, but not a requirement, the Court may consider many factors, including those enumerated within 18 U.S.C. §3553, and many not specified by statute, in determining a defendant's sentence. In this case, the Guideline range conflicts with the principle that a sentence should be "sufficient, but not greater than necessary" to comport with the purposes set forth by statute. Mr. Lopez is a perfect example of the reason the trial court is in the best position to make an individualized determination as to sentencing in any given case. While the Guidelines may be helpful when looking at statistics and what may result in a lawful and just sentence in a run of the mill case, each defendant is different and deserves the individualized analysis regarding his or her own background, characteristics, potential for rehabilitation, and circumstances surrounding the offense.

A sentence of incarceration within the Guideline range would be excessive in this matter. For Mr. Lopez to spend a number of years in prison contemplated by the Guideline calculations would be much more than necessary to comport with the factors set forth in 18 U.S.C. §3553(a), and would be excessive and unjustly harsh. Mr. Lopez's two co-defendants were sentenced to terms less than is recommended in the PSR, despite much more extensive

involvement. Jose Barocio, Jr. was sentenced to 40 months of imprisonment. He purchased 102 machineguns between June 2017 and May 2018 and made "how-to" videos for the Russian weapons parts distributor to post on his illegal website, showing how to use the parts to convert a gun to fully-automatic. Mr. Barocio was initially evasive with ATF agents regarding his involvement with the converted weapons, but ultimately admitted his involvement. Mr. Barocio purchased weapons for Mr. Tomlinson, swearing under penalty of perjury on ATF Form 4473 that the weapon was for himself. Mr. Barocio was possession of a 40 mm grenade practice round upon the search of his property, which he admitted was stolen from the U.S. military during the time he was serving. Mr. Barocio used his employment at the Mohave County Jail to produce a fake booking record to show to Mr. Lopez after co-defendant Tomlinson stole money from him and wanted Mr. Lopez to believe Mr. Tomlinson had been arrested. Additionally, Mr. Barocio contacted witnesses in this case while on pretrial release. On the other hand, co-defendant Kyron Tomlinson was sentenced to 15 months of imprisonment. Mr. Tomlinson initially admitted some involvement but lied to agents and said he was being extorted by Mr. Lopez who owed him money when in reality Mr. Tomlinson stole from Mr. Lopez. Mr. Tomlinson admitted to buying five machineguns and a silencer from Mr. Barocio. He also admitted selling four machineguns to Mr. Lopez. Mr. Tomlinson created a video of himself shooting a fully-automatic firearm and sent it to the Russian distributor of conversion kits to be posted on his illegal website.

     Clearly Mr. Lopez's involvement is more in line with Mr. Tomlinson and not Mr. Barocio. The sheer number of machineguns alone puts Mr. Lopez in parity with Mr. Tomlinson rather than Mr. Barocio and his 102 illegal firearms purchases. While Mr. Lopez has criminal history that may account for some of the disparity between his recommended sentence and the

sentences of his co-defendants, Mr. Lopez asks the Court to consider that his one felony conviction was a result of conduct which took place *after* the conduct in this matter. Mr. Lopez additionally requests the Court consider the fact that he was forthcoming with the investigating ATF agents, who told him that he would not be charged because he had already been charged in the California case.

When looking at the detrimental consequences of a Guideline range sentence, it should be considered that Mr. Lopez may still have a chance at regaining custody of his young daughter should he be sentenced to twenty-four months, rather than 41-51 months. Should Mr. Lopez be sentenced within the Guideline range, it is likely his daughter will either be in foster care for a further extended period of time, or that his rights will be terminated and she will be adopted by another family. His sentence directly affects his daughter's future. The longer Mr. Lopez is incarcerated, the more likely it is he will not be able to have a relationship with her in the future. This breaks Mr. Lopez's heart and would be a harsher consequence than any the Court may impose upon him.

Mr. Lopez had a good childhood but took a wrong turn and became addicted to cocaine and alcohol. Where he did not see how much of an impact his substance abuse had on his life before, Mr. Lopez is well aware now. In fact, he pleads for the Court to order that he be screened for RDAP. He looks forward to taking part in treatment so that drugs and alcohol will never have the hold on him that they used to have. Mr. Lopez accepts responsibility for his conduct in this case and knows now there is no justification or excuse for his behavior. He has accepted responsibility for his conduct even knowing it may result in a long term of incarceration. Mr. Lopez does not mean to ask the Court not to punish him for his conduct. He simply asks the Court to take into consideration the fact that he is more than his arrest record.

Mr. Lopez asks the Court, based on the totality of the circumstances, and considering all of the individual mitigating factors set forth herein, to conclude that the Guideline range is not the appropriate sentence in this case, and a downward variance is appropriate.

**V. Conclusion**

Defendant respectfully requests the Court find that a downward variance is appropriate, and that a sentence below the Sentencing Guidelines would satisfy the purposes set forth in 18 U.S.C. §3553, and sentence Mr. Lopez to a period of twenty-four months of incarceration with credit for time served. Mr. Lopez additionally requests the Court recommend that the Court order that he be considered for RDAP in the Bureau of Prisons.

Respectfully submitted: June 2, 2020.

                                                      Aguilar Law Office, PLLC

                                                      *s/Denise K. Aguilar*
                                                      Denise K. Aguilar
                                                      Attorney for Defendant

I hereby certify that on June 2, 2020,
I electronically transmitted the attached
document to the Clerk's Office using the
CM/ECF system for filing and transmittal
of a Notice of Electronic Filing to the following
CM/ECT registrants:

Honorable Dominic W. Lanza
Thomas Forsyth III, Assistant U.S. Attorney

By: *s/Denise Aguilar*